[No. 44149.    En Banc.    October 21, 1976.]

GENEVE G. JOHNSON, *Appellant*, v. SPIDER STAGING CORPORATION, ET AL, *Respondents*.

---

*Wolfstone, Panchot, Bloch & Kelley* and *J. Porter Kelley,* for appellant.

*Guttormsen, Scholfield & Stafford,* by *Jack P. Scholfield* and *A. Richard Dykstra,* for respondents.

HAMILTON, J.—Appellant, Geneve Johnson, appeals a summary judgment dismissing her wrongful death complaint on the grounds of forum non conveniens and declaring Kansas law to be the applicable choice of law.

Jack Johnson owned an exterior building cleaning business in Topeka, Kansas. He purchased a scaffold for his business from respondents, Spider Staging Corporation, Spider Staging, Inc., and Spider Staging Sales Company. On July 19, 1971, Jack Johnson was killed when he fell 60 feet from the scaffold. Appellant sued respondents for wrongful death, claiming they defectively designed the scaffold in that it could not withstand the stress of normal use.

The parties initially argued the choice-of-law issue to the trial court. Kansas law has a $50,000 wrongful death limitation.[1] Washington has no damage limitation on

---

[1] Kan. Sess. Laws of 1970, ch. 241, § 1, provides: "In any such action, the court or jury may award such damages as are found to be fair and just under all the facts and circumstances, but the damages cannot exceed in the aggregate the sum of . . . *fifty thousand dollars ($50,000)* and costs."

The Kansas legislature repealed this statute and enacted Laws of 1975, ch. 303, § 2. The new statute only limits the amount of nonpecuniary damages. It provides: "In any such action, the court or jury may award such damages as are found to be fair and just under all the facts and circumstances, but the damages, other than pecuniary loss sustained by an heir at law, cannot exceed in the aggregate the sum of twenty-five thousand dollars ($25,000) and costs." KSA 60-1903.

wrongful death actions. The trial court applied both the lex loci delecti and the most significant relationship choice-of-law rules and concluded Kansas law applies to the facts of this case. The trial court also dismissed appellant's complaint under the doctrine of forum non conveniens with a stipulation that respondents will submit to the jurisdiction of Kansas and will not plead the statute of limitations as a defense. The trial court entered a summary judgment in respondents' favor and appellant appeals from this judgment.

■ At the outset, we must determine whether the trial court properly applied the doctrine of forum non conveniens. If so, we need not reach the choice-of-law issue, as Kansas will assume jurisdiction and determine the applicable law. Forum non conveniens refers to the discretionary power of a court to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum. *See Werner v. Werner*, 84 Wn.2d 360, 370, 526 P.2d 370 (1974). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947), the Supreme Court outlined the factors a court should consider when applying the forum non conveniens doctrine:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

(Footnote omitted.)

The factors in the present case do not strongly favor the respondents-defendants. For example, all of the evidence which pertains to the manufacturing and marketing of the scaffold is in Washington State. Respondents are Washington corporations, and all of their principal officers reside in King County. Both of the engineers who designed the scaffold live in King County. The two principal witnesses from Kansas stated in affidavits that they willingly would appear in Washington. Also, appellant will bring the scaffold to Washington and give respondents an opportunity to examine it. The trial court therefore should not have disturbed appellant's choice of forum.

We now proceed to determine the appropriate choice of law. Respondents contend this jurisdiction still follows the lex loci delecti choice-of-law rule. This rule would require the court to apply the law of the place of wrong. In wrongful death actions the law of the place of injury would be the applicable law, *see* G. Stumberg, *Principles of Conflicts of Laws* 190-92 (3d ed. 1963), and in this case the injury occurred in Kansas. However, our recent decisions have rejected the lex loci delecti choice-of-law rule and have adopted the most significant relationship rule for contracts and tort choice-of-law problems. *Werner v. Werner, supra*; *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 459 P.2d 32 (1969); *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 425 P.2d 623 (1967); *see* Trautman, *Evolution in Washington Choice of Law—A Beginning*, 43 Wash. L. Rev. 309 (1967). The Restatement (Second) of Conflict of Laws § 6 (1971), with which we are in accord, developed this new approach, and section 145 sets out the general principles which apply to a tort choice-of-law problem:

(1) The rights and liabilities of the parties with respect to an issue in tort are *determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.*

(2) Contacts to be taken into account in applying the

principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. (Italics ours.) *Accord*, Restatement (Second) of Conflict of Laws §§ 175-80 (1971). Our approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found. *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, *supra* at 900. We therefore must consider the significant contacts of this cause with the states of Washington and Kansas. The following is a summary of these contacts:

| Washington | Kansas |
|---|---|
| 1. Respondents are Washington corporations, and Washington is their principal place of business. | 1. Appellant and Jack Johnson were residents and domiciliaries of Kansas. |
| 2. The scaffold was designed, tested, and manufactured in Washington. | 2. Jack Johnson's place of business was in Kansas. |
| 3. All of Respondents' advertising originated in Washington and was developed by Washington personnel. | 3. Jack Johnson ordered the scaffold from Respondents' Kansas City distributor. |
| 4. The scaffold was shipped from Washington to Kansas and pursuant to RCW 62A.2-401(2)(a)[2] title | 4. Kansas was the place of the accident and death. |

[2]RCW 62A.2-401(2)(a) provides:

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be

passed to Jack Johnson at
the time and place of ship-
ment.
5. Washington State set the
safety requirements for the
scaffold.

Each state has a distinct relationship with this cause, and the contacts are evenly balanced. However, *Potlatch No. 1 Fed. Credit Union v. Kennedy, supra* at 810, directs us to a "consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue." This state interest analysis was also contemplated in Restatement (Second) of Conflict of Laws § 175, comment *d* at 523 (1971), wherein it states:

> Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6. In large part, the answer to this question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred. *The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue involved* (see § 145, Comments *c-d*).

(Italics ours.)

A state's interest in limiting wrongful death damages is to protect defendants from excessive financial burdens. The state also seeks to eliminate speculative claims and difficult computation issues. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 580-81, 522 P.2d 666, 114 Cal. Rptr. 106 (1974); *Reich v. Purcell*, 67 Cal. 2d 551, 556, 432 P.2d 727, 63 Cal. Rptr. 31 (1967). This interest in preventing financial burdens and exaggerated claims is primarily local; that is, a state by

---

delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading.

"(a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment . . ."

enacting a damage limitation seeks to protect its own residents. *Hurtado v. Superior Court, supra* at 580-84; *Reich v. Purcell, supra* at 556.

*Hurtado v. Superior Court, supra* at 583-84, discusses a state's interest in recognizing a wrongful death action and allowing full recovery:

It is manifest that one of the primary purposes of a state in creating a cause of action in the heirs for the wrongful death of the decedent is to deter the kind of conduct within its borders which wrongfully takes life. . . . It is also abundantly clear that a cause of action for wrongful death without any limitation as to the amount of recoverable damages strengthens the deterrent aspect of the civil sanction: *"the sting of unlimited recovery . . . more effectively penalize[s] the culpable defendant and deter[s] it and others similarly situated from such future conduct."*

(Citations omitted. Italics ours.)

In this case all the defendants are Washington corporations, and the application of the Kansas wrongful death limitation will not protect Kansas residents. It will merely limit the damages of its own residents. Further, Washington's deterrent policy of full compensation is clearly advanced by the application of its own law. Unlimited recovery will deter tortious conduct and will encourage respondents to make safe products for its customers.[3] When one of two states related to a case has a legitimate interest in the application of its law and the other state has no such interest, clearly the interested state's law should apply. *Hurtado v. Superior Court, supra* at 580. Kansas has no interest in applying its limitation to nonresident defendants being

[3]Finally, *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 810, 459 P.2d 32 (1969), indicates the court should consider the justifiable expectations of the parties. Respondents advertise and sell their products in all 50 states, and only a few of these states have wrongful death limitations. They design and manufacture their product in Washington—an unlimited wrongful death recovery state. They also carry liability insurance in excess of the Kansas damage limitation. Thus, respondents could not have justifiably relied on the Kansas limitation. *See* Restatement (Second) of Conflict of Laws § 6(2)(d) (1971).

584

sued in their home state, and Washington has a legitimate interest in the application of its law. We therefore find Washington law to be the appropriate choice of law to apply to the facts of this case.

The judgment is reversed, and the cause is remanded for further proceedings consistent herewith.

STAFFORD, C.J., and ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.